The last case of the day is in re F.Y. for the appellant, Mr. Pryor, for the appellate, Mr. Majors. Mr. Pryor, you may proceed. Thank you, Your Honor. May it please the Court, Mr. Majors, this is an appeal of the termination of parental rights. There are a few things that are uncontroverted. The defendant admitted that there was an injurious environment because, this is the mother, because of the use of illicit drugs. And the trial court in the termination case found that the state had proved, by clear and convincing evidence, that the mother did not make reasonable progress in regard to achieving the goals of her service plan, which was designed to correct the ills or the mistakes that led her children to be deemed neglected. It also is uncontroverted that the court found that the state did not prove, by clear and convincing evidence, that the mother did not demonstrate reasonable interest, care, or concern. And the court also found that the state did not prove that the mother did not demonstrate reasonable interest, concern, again. And the only ground that there was found was failure to make reasonable progress. Of course, the case law is legion, that if there are three allegations, then the state only has to prove one, by clear and convincing evidence, and that's the justification of the termination, should it go on to the next stage. But, and the allegation, again, is failure to make reasonable progress within a nine-month period after the adjudication. If I may speak rhetorically, when is nine months not a reasonable time period to achieve reasonable progress? I think the response to that is if it's the first nine months, and that's exactly the case today. The first nine months after adjudication is the time period which the state was required to prove, by clear and convincing evidence, that the mother failed to make reasonable progress. I'm not disputing that's the law, it is exactly the statute. However, I think it's not unreasonable, in fact, I think it should be done to consider the circumstances of every case, and all the extraneous material facts on the case. You have a nine-month period, and it begins and ends the period for the termination, proving ground, if you will. Another rhetorical question, when is a nine-month period not a reasonable time period for a parent to make reasonable progress? When the parent's incarcerated. The termination alleged that there was reasonable progress, but it is uncontroverted that at the time of the adjudication, up until the time of the termination, the mother was incarcerated. Again, my friend cites in his brief that there's case law, Supreme Court law, that says that being incarcerated is not an excuse or a justification. I don't mean to imply that to this panel. However, what I do mean to imply is that that should be taken into consideration, not as an excuse, but one of the facts of the case that make it different from other facts of the case. Another rhetorical question, what can prevent a parent from achieving reasonable progress in satisfying the service plan? And my answer to that is when visitation was terminated less than two months after the adjudication. The mother was incarcerated. The department had arranged visits between the mother and the children. But after 45 to 60 days after the adjudication, the court entered an order for banning, forbading visitation between the mother and the children. Now the justification of that, of course, maybe not of course, the justification is that there was an ill effect as a result of the visitation with the mother according to their therapist. Finally, when is a nine-month period not a reasonable time frame or picture to demonstrate whether or not a parent had made reasonable progress? And my answer to that is when there's one and only one caseworker. The state called a single witness for the best interest hearing, a single witness for the fitness hearing. It was the same caseworker. And as a matter of fact, this caseworker, we have a nine-month period measuring stick from September to May. This caseworker was not involved with this mother the entire nine-month period. I would be, I don't know if I'd call it guessing, but I would say the caseworker was involved in this case four to five months out of the nine-month period. Now what that does is it doesn't give a different view in regard to a parent's efforts, doesn't give a different view by a different person, a different perspective about what kind of effort, what kind of progress that they made. As a matter of fact, I believe that in this case the department did more to retard or hinder the mother achieving the purposes of the service plan. The best interest hearing demonstrated or the state said that they proved by clear and convincing evidence that it was in the best interest of the children that the mother's parental rights be terminated. And they cite in their brief ten factors that the court considers as to whether or not termination of parental rights is in the best interest. The child's identity, its relationship with the foster home, sense of attachments, child's wishes and long-term goals. I don't believe that would apply in this case based on the age. The risk related to substitute care, the preference of the person available to care for the child. Now those are some of the considerations that the court must go through in order to determine whether or not the state has proved by preponderance of the evidence that the best interest of the children will be served by termination. However, in this case, at the time of the termination procedure, at the time of the fitness and at the time of the best interest, the children were not in a permanent placement. They had remained in placements, I believe it was at least one, it was only one as to the children, but it was not a permanent placement. The foster parents in each of their placements was not interested in providing the permanence of adoption. Also at the best interest hearing there was testimony from the mother's relatives indicating that there was a close relationship between the mother and the children when and if she was allowed to visit with them. But the interesting thing is this, the mother testified that she was going to be parole eligible for release approximately 18 months. It was the spring of 2015. My point in bringing that up is that the children would have to be placed in permanency placement maybe at least that long to determine whether or not it is in their best interest for the placement in question to provide permanence for adoption. So the state might have indicated that she's going to be in jail forever. The clock isn't running on the kids yet either because they don't have a placement where they're going to have permanence. So I think the fact that the state is required to prove by preponderance of the evidence that it's in the best interest of the children, the fact that they weren't in a permanent placement I think flies in the face of establishing that burden of proof. Nevertheless, the court found that the state did satisfy its burden that termination of parental rights was established by the appropriate burden. The relief requested by the mother is that this case be reversed and remanded. Of course, that would mean that this panel has to find that the court's order terminating and finding unfit was against the manifest weight of the evidence. I think if the panel looks in all four corners of the fact situation, the mother's circumstances, although not an excuse, but her incarceration should be considered and not dismissed, the short time period, the minimum time period, the fact that the children were not in a permanent placement, and the fact that the record establishes as contained in my brief, the mother had completed parenting classes. The mother had completed drug and alcohol counseling. The mother was due to complete her mental health counseling. And again, within the four corners, there was testimony that when the mother was first placed in the Department of Corrections, she was not eligible for parenting classes. So she was denied by the department to be placed in a situation in the Department of Corrections for her to even do her parenting classes. And I think that should be taken into consideration in the time frame, the nine-month time frame. And as the state pointed out, the mother failed to satisfy the goals of the service plan in regard to the goal of adequate housing and employment. I won't point out the obvious circumstances that that was impossible to achieve, but I don't think the court gave that due consideration. We would ask this panel, this court, to reverse and remand the finding of unfitness and the termination of parental rights back to the trial courts. I am available for questions, if any. Thank you. Thank you, Mr. Pryor. May it please the court, Mr. Pryor, I think Mr. Pryor has done a good job of representing respondents. He's done everything he could, and he's done a good job of finding all the flaws in the state's case. But I don't think it should be reversed or remanded. While preparing for this, it occurred to me that no one had ever supplemented the record with the underlying criminal case. And I don't know how to go about that except maybe ask leave to file a motion to supplement the record later if the court thinks it's necessary. But to get to the point of it, the respondent mother was convicted of trying to sell five-year-old DP into prostitution out on the streets here in Springfield. She was arrested on March 19, and she pleaded guilty. I think it was, excuse me, it was July 13th of 12, she pleaded guilty and was incarcerated for six years. And the investigation revealed that she was trying to sell the other two children into prostitution. And all three children were sexually acting out when they first came into care, which indicates they may have been sold into prostitution. But the state is relying here on this JL case, which just simply, I'm sure the court knows what it says, simply says incarceration is not an excuse. And the respondent attempts to use it as an excuse. She took some of these prison courses, there's evidence of that. It's easy to make a mistake when there's so many facts here, but I think Mr. Pryor was incorrect when he said that she completed parenting classes. I don't think she did. The trouble I have in this JL case is a good example, is what are these prison courses? In JL they talk about one of the parents going to anger management, it was a four-day course. They talk about one of the parents going to parental classes, there were eight sessions. So, I mean, can you go from selling children on the street into prostitution, five-year-olds, six-year-olds, seven-year-old children, to being a good parent because you went to a four-day class? I don't think so. Judge Sanchez was in the best position here to determine the weight and the credibility of this one witness' testimony. You only need one. Nobody objected to her hearsay statements. There were four lawyers there. Nobody questioned her about her statements. Nobody objected to it. But the hearsay comes in for whatever value it has, and Judge Sanchez was in the best position to determine its value. As to the best interests, as I said, all three of these children were sexually acting out when they were taken into care. I think I have it right that FP's father hadn't surrendered his rights, so you can't adopt him. DP was with FP, and DP was, they were trying to get her into an adoptive placement, but they were first in specialized care because of their sexually acting out, and they were going through counseling because of that. FY's foster mother was willing, it says, the record says, willing to provide him with permanency. It didn't say adopt. So those are my answers to all of Mr. Pryor's points, and I'll try to answer the Court's questions. Does there appear to be any rebuttal, Mr. Pryor? Just briefly, Judge, although I hate it when lawyers say that because they never mean it. In regard to the criminal case, I'm sure my friend from the Attorney General's office can figure out how to supplement the record. However, before he wastes his time doing that, my recollection of the record and the facts of the case is that the criminal case, the resolution of the criminal case, and certainly not the certified copy of conviction or plea was part of the State's case. It was a stipulation entered into by the mother, approved by the courts, and agreed to by the State, that the environment was injurious because of mother's use of drugs. Although we're close in age, I believe my recollection is that parenting classes were completed by the mother before the termination procedure, before she went into jail. And my colleague who indicates that, you know, what kind of courses were there at prison, kind of flies in the face of what they're trying to establish here. The courses are in prison to help the inmates and to help parents become better parents. Whether or not it was Harvard-approved, I don't believe is a relevant issue. I'm reminded of a case that I had in trying to reverse a revocation of a driver's license and went to the appellate court, and even though the court, even though the record established that it was uncontroverted, that the driver in question had been sober for 24 months, it was rejected because he didn't become sober the right way. He didn't do it with AA. He didn't do it with an abuse. He just did it by himself, and even though you're sober and that's what we want, if you don't do it the right way, then we can't give you credit. And that's what my colleague's argument sounds like in regards to the classes. Finally, what's this case about? This case is about a statute that doesn't exist. If they want to terminate parental rights because a parent's in prison, then amend the statute. Make that a grounds. Don't try to go around it by saying, oh, you're using that as a shield or you're using that as an excuse. If that's the reason for the termination, if that's the reason for the best interest finding, then put it in the statute. Makes things a lot easier. Any questions? I think so. Thank you.